UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

Joseph Norton                                        Case No. 1-23-41862-ess

                         Debtor.               (Chapter 13)
-----------------------------------------------------------------x

### ECP PROPERTY II, LLC'S AFFIRMATION IN OPPOSITION TO DEBTOR'S MOTION TO HOLD ECP PROPERTY II LLC AND ITS AGENTS IN CONTEMPT OF THE UNITED STATES BANKRUPTCY COURT & TO ASSESS PUNITIVE DAMAGES, AND IN SUPPORT OF ITS CROSS-MOTION FOR CONTEMPT AGAINST DEBTOR'S COUNSEL

Movant, ECP Property II, LLC ("ECP"), by its attorneys, hereby responds in opposition to Debtor Joseph Norton's ("Debtor" or "Norton") *Motion to Hold ECP Property II LLC and Its Agents in Contempt of the United States Bankruptcy Court & to Assess Punitive Damages* [ECF No. 19] (the "Motion") and moves this Court for contempt against Debtor's counsel, Karamvir Dahiya ("Dahiya"), and in support thereof states:

### PRELIMINARY STATEMENT[1]

1. Before addressing the Motion on a purely legal basis, and as someone who does not have the history of the ECP's lead counsel and this Debtor, I reviewed the Motion filed by Dahiya, and my initial thought was to ask: When asked to impose sanctions, isn't the Court supposed to have not only the truth, but the whole truth?

2. My understanding of a motion for sanctions or contempt is that the moving counsel has an ethical duty to present the Court with a complete set of facts, and the applicable law,

---

[1] The Preliminary Statement section of this brief was drafted by ECP's undersigned co-counsel, Todd Strassberg, Esq. ("Strassberg").

1

including any law which might support the alleged contemptable behavior. Instead, I see a crafted record in which Dahiya deliberately omits the following relevant documents:

- All the exhibits (collectively, the "Complaint Exhibits") to the State Court Complain, including Complaint Ex. 4, a TD Bank Statement showing State Court defendant 35 Kermit Place LLC as the recipient of $1,534,836.90 in funds from an account owned by ECP's judgment debtor Riverrock Nehemiah Realty LLC – not from Debtor Joseph Norton;

- The *Memorandum of Law Regarding Inapplicability of Automatic Stay to Non-Bankrupt Defendants in this Action* (the "Stay Brief"), filed by ECP on the applicability of a stay affecting transferors of an LLC owned by a debtor in the context of a Chapter 13 proceeding (State Court ECF No. 118); and

- The deeds (collectively, the "Deeds") to the real properties owned by the LLCs (defined below), which, despite Debtor's has claim of "Bare Legal Title" to the LLCs, do not show Debtor's name on the faces of the Deeds.

- In the interest of providing this Court with a sufficient record to decide Debtor's Motion and ECP's cross-motion for contempt, the Complaint Exhibits are attached collectively hereto as **Exhibit 1**; the Stay Brief is attached hereto as **Exhibit 2**; and the Deeds are attached collectively hereto as **Exhibit 3**.

3. Next, I believe it relevant that Dahiya should have informed the Court that he neither filed opposition to ECP's Stay Brief, which contained relevant case law on the applicability of the stay in the context of a Chapter 13, nor appeared in State Court for any of the attachment proceedings.

4. Finally, if Dahiya files a contempt motion supported by a brief that is not based on cases filed under Chapter 13 of the Bankruptcy Code, shouldn't he be under some duty to inform

the Court of that not-so-minor detail, since he was privy to case law distinguishing Chapter 13 cases from cases filed under other Chapters contained in the case law filed in ECP's Stay Brief?

5. Although this Court is appropriately loath to impose contempt or sanctions against an attorney appearing before it, Dahiya's conduct in filing the Motion rises to the level of a finding of contempt. The Motion should be denied, and Dahiya should be held in contempt.

## INTRODUCTION

6. The substance of the Motion – to the extent that it has any substance at all – is premised two false notions. First, Debtor argues that the action currently pending in the Supreme Court for the State of New York in Kings County (the "State Court") styled *ECP Property II, LLC v. Joseph Norton, et al.*, Index No. 502651/2022 (the "State Court Action") is stayed as to all defendants as a result of Debtor's filing of this bankruptcy case. (Motion, pp. 5-12.) Simply because Debtor's counsel says that the State Court Action is stayed does not make it so, and the State Court has already ruled – twice – that the stay does not apply to any party to the State Court Action other than Debtor.

7. The second false notion is that ECP's continued prosecution of the State Court Action as against the remaining defendants would have any effect on assets of the Debtor's estate. In his late-filed *Schedule A/B* [ECF No. 28] (the "Schedules"), Debtor claims he owns "bare legal title" to 29 Kermit Place, LLC; 32 Kermit Place, LLC[2]; and 35 Kermit Place, LLC (collectively, the "LLCs"). As argued more fully below, assets to which a debtor only has "bare legal title" are not assets of the debtors' estate. Other than the LLCs, Debtor claims no interest in any of the remaining defendants in the State Court Action, so proceeding against those individuals and entities will also have no effect on the estate.

---

[2] This is believed to be a typo, and actually to mean 31 Kermit Owner, LLC.

8. In the Motion, Dahiya misrepresents the contents of the Attachment Order (defined below), intentionally misstates the law as it relates to application of the automatic stay to non-bankrupt parties in the context of a Chapter 13 bankruptcy case, and attempts to argue that only a non-existent bankruptcy trustee had standing to bring the State Court Action. These representations and arguments are frivolous and violate the New York Rules of Professional Conduct (the "RPC").

9. As a result of the Stay Brief, Dahiya was fully aware of contrary, controlling authority that holds that the stay only applies to Debtor and not to the remaining co-defendants, and yet he declined to disclose even the existence of contrary rulings by the State Court to this Court. In keeping with a long pattern of attempting to deceive this Court and making frivolous filings, Dahiya persisted in filing the Motion and in seeking a finding of contempt against ECP's counsel. This conduct must be deterred, and Dahiya must be held in contempt and severely sanctioned for the filing of the Motion.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and 11 U.S.C. § 1112. This is a contested matter under Fed. R. Bankr. P. 9014, and is a core proceeding.

11. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL AND PROCEDURAL BACKGROUND

12. Debtor filed a voluntary petition (the "Petition") for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on May 25, 2023 (the "Petition Date").

13. Among other deficiencies noted by the Clerk of this Court in a *Notice of Deficient Filing – Chapter 13* [ECF No. 3], the Petition contained no schedules, no financial disclosures, no Chapter 13 Plan, and no calculations related to Debtor's income. This Court later entered an *Order*

*to Show Cause* [ECF No. 16] requiring Debtor to file the required schedules and forms. The required Schedules and forms were filed two days or less prior to the show cause hearing.

14. The State Court Action was commenced on January 27, 2022, approximately 16 months before the Petition Date. At the time the State Court Action was filed, there was, of course, no trustee appointed in this case because the case would not be filed for more than a year.

15. Not coincidentally, the Petition Date is two days after the State Court entered an *Order to Show Cause* (the "Order to Show Cause") and temporary restraining order in the State Court Action. The Order to Show Cause enjoined the defendants in the State Court Action from further transferring or concealing assets from ECP, among other relief. A copy of the Order to Show Cause is attached hereto as **Exhibit 4**.

16. In a letter dated June 1, 2023 (the "Joseph Letter"), Narissa Joseph – another of Debtor's attorneys – provided notice of the bankruptcy action to the State Court and requested that the Court "stop the pending action." On June 7, 2023, Dahiya, the attorney for the Defendants in this action, filed a separate letter (the "Dahiya Letter") claiming that because Norton has sought bankruptcy protection, the "entire" State Court Action should now be stayed pursuant to 11 U.S.C. § 362. Copies of the Joseph Letter and the Dahiya Letter are attached collectively hereto as **Exhibit 5**.

17. In response to the Joseph Letter and the Dahiya Letter, at a hearing on June 7, 2023, the State Court directed ECP to file a brief regarding Debtor's assertion that the entire case should be stayed. In compliance with that order, ECP filed its Stay Brief on July 5, 2023. In the Stay Brief, ECP expressly states that the case is stayed as against Norton. (Stay Brief, p. 6.)

18. It was also at the June 7 hearing that Debtor alleges that Strassberg, stated that the bankruptcy case "doesn't matter." To the extent that Strassberg ever uttered any such phrase, it was only in reference to the non-bankrupt defendants. ECP has not taken a single action against

5

Debtor in the State Court Action since the Petition Date, as demonstrated more fully below.

19. Dahiya received a copy of the Stay Brief by virtue of the State Court's electronic filing system., and neither Debtor nor any of the other defendants filed a reply to the Stay Brief.

20. At a hearing on July 12, 2023, the State Court held that the stay applied only to Debtor, but that ECP could proceed against the remaining defendants. Counsel for the defendants in the State Court Action did not appear at the hearing, and the State Court entered an *Order* (the "July Order") on July 12, 2023, the action was stayed "as to Joseph Norton only." A copy of the July Order is attached hereto as **Exhibit 6**. July 10, 2023, was forty-five days after the Petition Date, and it is the time when Debtor's required schedules and forms were due under the Bankruptcy Code. Accordingly, at the July 12, 2023, hearing, the State Court knew that this bankruptcy action could be subject to dismissal, yet stayed the case as to Norton anyway.

21. The July Order also directed ECP to file a proposed order on notice, so that the defendants would have an opportunity to file their own proposed order.

22. As a result of the State Court's electronic filing system, Dahiya was aware of entry of the July Order and the State Court's holding that the stay did not apply to any of the defendants other than Debtor. Nevertheless, Dahiya filed the Motion, based on the false assumption that the stay applied to all the defendants in that action.

23. After filing Motion in this Court, Dahiya took the further step of filing a copy of the Motion in the State Court on August 28, 2023. On September 11, 2023, apparently in response to Dahiya's filing of the Motion in State Court, counsel received an eTrack Supreme update from the State Court, which informed ECP that the State Court Action had been stayed.

24. In response to the notification, ECP's counsel sent a letter to Justice Leon Ruchelsman (the "Ruchelsman Correspondence") via the State Court's electronic filing system on September 12, 2023. The Ruchelsman Correspondence informed the State Court that the stay only

applied to Debtor, as reflected in the July Order and the proposed Attachment Order (defined below) that had not yet been signed and entered as of that date. A copy of the Ruchelsman Correspondence is attached hereto as **Exhibit 7**.

25. In response to the Ruchelsman Correspondence, the State Court sent another eTrack Supreme notification on September 14, 2023 (the "eTrack Notification"), removing the "Stay" designation from the State Court Action and scheduling a status conference on November 15, 2023. This represents the second time that the State Court has correctly declined to impose the automatic stay to defendants other than Debtor. A copy of the eTrack Notification is attached hereto as **Exhibit 8.**

26. In the Motion, Dahiya also mischaracterized the proposed order submitted by ECP in accordance with the July Order. In no uncertain terms, the proposed order stays the State Court Action as to Debtor. Indeed, the State Court entered the proposed order as a final *Order Granting Preliminary Injunction, Attachment Pursuant to CLPR Article 62, and Leave for a Plaintiff to file a Supplemental Summons and Amended Complaint* (the "Attachment Order") on September 18, 2023. A copy of the Attachment Order is attached hereto as **Exhibit 9**. Just as it appeared in the proposed order Dahiya attached to the Motion, the State Court held that the action was stayed as to Norton only in the Attachment Order.

27. As directed by the Attachment Order, ECP filed its *Amended and Supplemental Complaint* and *Supplemental Summons* (the "Amended Summons and Complaint") in the State Court Action on October 2, 2023. The Amended Summons and Complaint both contain language stating clearly that the State Court Action is stayed as to Norton. Copies of the Amended Summons and Complaint are attached collectively hereto as **Exhibit 10**.

28. ECP has been assiduous in its efforts not to pursue Debtor in the State Court Action since the Petition Date. The automatic stay does not apply to the non-bankrupt defendants, and

Dahiya is fully aware of that fact. The Motion should be denied, and Dahiya should be held in contempt of this Court.

**LEGAL AUTHORITY AND ARGUMENT**

A.   **Opposition to Debtor's Motion**

   1.   **The Automatic Stay Only Applies to Debtor**

29.   As more fully argued in the Stay Brief, in the context of a Chapter 13 bankruptcy case, the stay can only be applied to individuals and not to corporate entities. None of the individual defendants in the State Court Action are co-debtors on the debt ECP seeks to collect in that action, and numerous courts have held that a bankruptcy stay cannot apply to corporate entities in a Chapter 13 bankruptcy.

30.   The case law cited in the Motion is inapposite. Debtor relies heavily on <u>Queenie, Ltd. v. Nygard Int'l</u>, 321 F.3d 282 (2d Cir. 2003) and <u>Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)</u>, 20-2187 (2d Cir. July 6, 2022) for the proposition that Joseph Norton's bankruptcy filing stays the entirety of the State Court Action. (Motion, pp. 4, 8, 12.)

31.   In <u>Fogarty</u>, the Second Circuit Court of Appeals held that a lender violated the automatic stay when it proceeded with the foreclosure sale of property occupied by an individual who had filed a Chapter 7 bankruptcy. <u>Id</u>. at * 9-13. The owner of the property was a separate entity, and both the entity and the individual bankrupt debtor were parties to the foreclosure. <u>Id</u>. This case does not involve a foreclosure and does not involve a Chapter 7 bankruptcy; continuing the State Court Action against the non-bankrupt defendants will not involve a violation of the automatic stay as described in the <u>Fogarty</u> case.

32.   In <u>Queenie</u>, the Second Circuit did apply the automatic stay to a non-debtor

8

corporation wholly owned by an individual who had filed a Chapter 11 bankruptcy, on the basis that "adjudication of a claim against the corporation will have an immediate adverse economic impact on [the individual]." Id. at 288. Queenie is distinguishable on numerous levels from this case. Most notably, it was decided in the context of a Chapter 11 bankruptcy, not a Chapter 13. The stay was also only applied because the corporation was wholly owned by the individual debtor. In the Schedules, Debtor asserts that he owns only "bare legal title," to the LLCs, meaning they are not a part of his estate (see below). The remaining entity defendants and the individual defendants in the State Court Action are unaffected by the holding in Queenie. Proceeding against the non-bankrupt Defendants in this action will have no "immediate adverse impact" on Joseph Norton or his bankruptcy estate.

33. Furthermore, under relevant bankruptcy law precedents, the automatic stay in Chapter 13 bankruptcy cases cannot apply to corporate entities at all. In In re McCormick, 381 B.R. 594 (Bankr. S.D.N.Y. 2008), an individual Chapter 13 debtor sought to extend the automatic stay to his wholly-owned LLC and employer, on the basis that the pending action against the LLC would negatively impact his ability to reorganize. Id. at 597-98. The Court expressly recognized the Second Circuit's decision in Queenie, but refused to extend the stay to the debtor's LLC because no satisfactory explanation was given as to why the LLC could not commence its own bankruptcy proceeding and invoke its own stay. Id. at 602.

34. The Court also distinguished Queenie by noting that the individual debtor in that case filed a Chapter 11 case, not a Chapter 13. The LLC in McCormick could neither be a debtor under Chapter 13, nor a co-debtor under section 1301(a) of the Bankruptcy Code, which allows the stay to apply to co-debtors under certain conditions. Id. The LLC could not be a debtor under Chapter 13 because relief under Chapter 13 is only available to "individuals," and also could not take advantage of the co-debtor stay because it only applies to co-debtors that are both

9

"individuals" and are liable with the debtor on a "consumer debt." Id. at 598.

35. An LLC is obviously not an individual, and the debts involved were business-related, not consumer debts. See also In re Sheu, 2009 WL 1794473 (Bankr. E.D.N.Y. June 16, 2009) (holding that an LLC's property is not protected by the automatic stay, even where the LLC was wholly owned by an individual who had filed for bankruptcy under Chapter 13 of the Bankruptcy Code); see generally Irve J. Goldman, "Bankruptcy Beat: Does The Automatic Stay Apply To Stay Acts Against An Individual Debtor's Wholly-Owned Company?", https://casetext.com/analysis/bankruptcy-beat-does-the-automatic-stay-apply-to-stay-acts-against-an-individual-debtors-wholly-owned-company?sort=relevance&q=.

36. Here, even if they were co-debtors – which they are not – the LLCs and other entity defendants in the State Court Action cannot benefit from the automatic stay because the stay ***cannot*** apply to corporate entities in a Chapter 13 bankruptcy. The liability of both the individual and entity defendants in the State Court Action is based on their receipt of funds originally owned by ECP's judgment debtor, Riverrock Nehemiah Realty, LLC ("Riverrock"), not Norton. The liability ECP seeks to impose in the State Court Action is wholly independent of the debt owed by Norton pursuant to the Judgment.

**2. The State Court Action Has No Effect on Debtor's Estate**

37. In the Schedules, Debtor claims he owns "bare legal title" to the LLCs. Section 541(d) of the Bankruptcy Code states that property "in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest," is only property of the debtor's estate "to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

38. In Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2d Cir. 1989), the Second Circuit Court of Appeals clarified that under

Section 541(d), "the bankruptcy estate *does not include* property of others in which the debtor has some minor interest such as a lien or *bare legal title*." Id. at 93 (internal quotation and citations omitted) (emphasis added); see also Geltzer v. Balgobin (In re Balgobin), 490 B.R. 13, 20 (Bankr. E.D.N.Y. 2013).

39. The Schedules claim only Debtor owns "bare legal title," and that Debtor's wife claims ownership of the LLCs. Because Debtor's only interest is "bare legal title," and the LLCs are owned by his wife, they are not part of the bankruptcy estate, and ECP proceeding against them will have no effect on the estate. None of the other non-bankrupt defendants in the State Court Action are listed anywhere in the Schedules; accordingly, ECP proceeding against those defendants will have no effect on Debtor's estate.

### 3. ECP Has Standing to Bring the State Court Action

40. To the extent the Motion argues that only the bankruptcy trustee had standing to bring the State Court Action – and that ECP did not have standing to bring the State Court Action – such an argument borders on unhinged. (Motion at 10-11.) ECP commenced the State Court Action on January 27, 2022, approximately 16 months before the Petition Date. At that time, there was, of course, no trustee appointed in this case because the case had not been filed.

41. In the Motion, Dahiya seems to argue that the only party with standing to bring the State Court Action was a non-existent bankruptcy trustee. Needless to say, the apparition of a bankruptcy trustee could not have brought the State Court Action in January 2022, and ECP – as the holder of the judgment against Riverrock – had standing to bring suit when it filed the State Court Action.

### 4. Sanctions and Contempt Against ECP and Its Attorneys Are Unwarranted

42. If Debtor and Dahiya are wrong in asserting that the stay applies to non-bankrupt defendants in the State Court Action – and they are, as amply demonstrated above – then there are

no grounds to impose sanctions or hold ECP and its counsel in contempt. This Court cannot, and would not, impose a sanction for pursuing defendants who are not protected by the automatic stay.

43. The Motion also represents Debtor's and Dahiya's last-ditch effort to get a second bite at the apple and to impose a stay that is not permitted by the law. Debtor had a full and fair opportunity to be heard on the issue in the State Court, and the State Court twice declined to extend the stay to the non-bankrupt defendants. (See July Order, Attachment Order, eTrack Notification.)

44. At the very least, ECP and its counsel have relied in good faith on the rulings of the State Court in determining that it is entitled to pursue the non-bankrupt defendants in the State Court Action. In determining whether to impose a sanction against an attorney, the attorney's bad faith is the central question to be addressed. See, e.g., Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (applying 28 U.S.C. § 1927 to conclude that sanctions under that statute "must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power").

45. Here, ECP's demonstrable reliance on rulings by the State Court on matters that were fully litigated before that court shows, at a minimum, a total lack of bad faith in its decision to continue to pursue the State Court Action against the non-bankrupt defendants.

46. Finally, the Motion focuses much of its attention on the allegation that Strassberg said "Bankruptcy doesn't matter" to Debtor at the June 7 hearing in State Court. (Motion, pp. 5, 13.) Even if this allegation is true, by this affirmation, Strassberg declares and avers that his statement could only have meant that the bankruptcy stay does not apply to non-bankrupt defendants.

47. ECP's actions since the Petition Date show a clear deference to the automatic stay as it applies to Norton. In the Stay Brief, ECP stated that the case was stayed against Norton. In each and every order of the State Court, including the July Order and the Attachment Order, the Court clarifies that the stay is in place as to Norton. In filing the Amended Summons and

12

Complaint, ECP made absolutely clear that the stay is in place as to Norton. ECP has not – and will not – take any action against Norton until this case is dismissed or otherwise terminated.

48. As argued more fully below, Dahiya's conduct in filing the Motion merits sanctions, not the conduct of ECP and its attorneys.

**B.** **Cross-Motion for Contempt**

49. Dahiya has shown a long pattern of frivolous filings and attempts to deceive this Court. Only holding Dahiya in contempt and imposing severe sanctions would possibly prevent future misbehavior by Dahiya, and the time has come for this Court to impose such a sanction.

50. Bankruptcy Code Section 105(a) permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court's power to impose sanctions is further buttressed by the Court's inherent powers: "Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.'" In re Green, 422 B.R. 469, 473 (Bankr. S.D.N.Y. 2010) (quoting Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir. 1996)); see also Dahiya v. Kramer, 2014 WL 1278131, at *3 (rejecting the argument that a court's inherent authority to impose sanctions may be exercised by Article III judges only).

51. The standard for imposing sanctions is high, and the Second Circuit has held that "'[t]o impose sanctions under either [28 U.S.C. § 1927 or the court's inherent] authority, the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'" Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000), 221 F.3d at 79 (quoting Agee v. Paramount Commc'ns Inc., 114 F.3d 395, 398 (2d Cir. 1997)).

52. RPC 3.1 prohibits an attorney from bringing or defending a proceeding "unless

there is a basis in law or fact for doing so that is not frivolous." The Motion is frivolous, and it violates RPC 3.1 in that Dahiya was aware of the multiple rulings by the State Court that the stay does not apply to non-bankrupt defendants. In filing the Motion, Dahiya is not attempting to make a "good faith argument for an extension, modification, or reversal of existing law," which would be permitted by RPC 3.1. He is simply trying to get a different – and unsupported – ruling than the State Court had made in the July Order and the Attachment Order. Such conduct is sanctionable.

53. Dahiya's argument that Debtor's bankruptcy trustee – who did not exist at the time the State Court Action was filed – is the only party with standing to pursue the State Court Action is not only frivolous, but absurd. ECP is the only party with standing to recover funds that were wrongfully transferred by its judgment debtor, Riverrock, to numerous third parties.

54. RPC 3.3 prohibits an attorney from knowingly making a "false statement of fact or law to a tribunal" or failing "to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." The Motion violates RPC 3.3 in the following ways:

 a. Dahiya misrepresented the status of the State Court Action by failing to disclose that it is currently stayed as to Debtor, and that every pleading by ECP since the Petition Date has recognized that fact. The July Order and the Attachment Order both clearly state that the case is stayed as to Debtor.

 b. Dahiya attempted to conceal controlling legal authority known to him by filing to cite to McCormick and Sheu cases cited above. Dahiya was served with a copy of the Stay Brief, and yet chose to ignore the controlling law in filing the Motion.

55. The Motion is not Dahiya's first attempt to attack ECP's counsel before this Court. In *In re Thema Norton*, E.D.N.Y. Bankr. Case No. 17-42199-ess, Dahiya filed a baseless adversary

proceeding against Jeremy Friedberg and Gordon Young, who were both counsel to ECP at the time seeking damages of $15,000,000. Tellingly, Dahiya admitted to counsel that he had ***never*** seen proof of damages alleged in that complaint. This Court dismissed the adversary proceeding against Messrs. Friedberg and Young on July 15, 2021.

56. ECP does not bring this cross-motion lightly. The Motion is entirely meritless and was made for an improper purpose. <u>Revson</u>, 221 F.3d at 78. Dahiya filed it with full knowledge of relevant facts and law that he failed to disclose to the Court. The Motion was also made without a proper purpose because the issues raised in the Motion have already been fully litigated and decided in the State Court. This Court should not permit Dahiya to continue his attempts to deceive and mislead the Court, and it should exercise its powers to hold Dahiya in contempt and sanction him severely.

## CONCLUSION

57. The Motion must be denied. The automatic stay does not apply to the non-bankrupt defendants in the State Court Action, and ECP and its attorneys have rigorously upheld the automatic stay as it applies to Debtor.

58. In filing the Motion, Dahiya breached the Rules of this Court and his ethical duties as an attorney under the RPC. Dahiya must be held in contempt of court, and a severe sanction must be imposed to deter and prevent future frivolous and malicious conduct by Dahiya.

WHEREFORE, ECP respectfully request that this Court enter an Order:

1. Denying the Motion in its entirety;
2. Holding Dahiya in contempt of court;
3. Entering a monetary sanction in the amount of $25,000 against Karamvir Dahiya, payable to ECP;

4. Revoking Karamvir Dahiya's admission to practice before the U.S. Bankruptcy Court for the Eastern District of New York; and

5. Awarding any other further relief that the Court deems just and proper.

Dated: New York, New York
October 9, 2023

Yours,

FRIEDBERG PC
*Co-Counsel for Plaintiff*

By: /s/ Jeremy S. Friedberg
Jeremy S. Friedberg, Esq.
26 Broadway, Suite 934
New York, NY 10004
Tel: (410) 581-7400
jeremy@friedberg.legal

By: /s/ Todd Strassberg
STRASSBERG & STRASSBERG, P.C.
*Local counsel for Plaintiff*
Todd Strassberg, Esq.
23 Kolbert Drive
Scarsdale, New York 10583
Tel: (212) 736-9500 Ext. 102
todd@strassbergpc.com